JOHN G. CAMPBELL AND JAMES M. BAKER *v.*
DANIEL W. SHIVERS.

Judges of Supreme Court have Power to Appoint Regular Terms of the district courts for the several districts of this territory.

Possession of One Tenant in Common is the Possession of All the co-tenants, and this unity of possession can only be dissolved by proceedings in partition, or by amicable agreement.

Uninterrupted Adverse Possession of Water Right for Five Years, under a claim of right, gives a valid title.

A. T. Reps. I—11

DECLARATIONS MADE BY PARTIES CLAIMING A WATER, RIGHT that they
would not permit a certain person to have any of the water, if made in
the absence of such person and without his knowledge, are not admissible
in evidence against him, in an action brought by such claimants to re-
cover damages for the water taken by him.

EXCEPTION MUST REFER TO SOME PORTION OF THE EVIDENCE in a case, in
order to be of any avail to the party who makes it.

PARTY ASSERTING TITLE UNDER DEED IS NOT CONFINED TO IT, but may
claim under any other title.

WHERE ONE PERSON MAKES DECLARATION TO ANOTHER that a third per-
son is a joint owner with him in a water right, and such other person, re-
lying on such declaration, purchases the interest of the third person, re-
cords his deed, and enters into possession, the person making the decla-
ration will be estopped from denying the right of such purchaser. And
those claiming under the person who made such declaration will be
thereby put upon inquiry as to the true state of the title.

TO INSTRUCT JURY THAT THERE MUST BE PREPONDERANCE OF EVIDENCE
in favor of a party to entitle him to a verdict is not error.

APPEAL from the district court of the third judicial dis-
trict. The opinion states the case.

*Coles Bashford*, for the appellants.

*J. E. McCaffry* and *John A. Rush*, for the respondent.

By Court, TITUS, C. J.:

Judgment for the defendant, Daniel W. Shivers, in the
district court of the third judicial district, at the suit of the
plaintiffs, John G. Campbell and James M. Baker, for the al-
leged unlawful use of water in irrigation, is the cause of this
appeal. The appellants here were the plaintiffs below, the
defendant there is the respondent here; and the record by
the transcript discloses the following conclusions of-fact:
In the month of March, 1867, the defendant moved to Chino
valley, in the county of Yavapai, near Fort Whipple, about
twenty-five miles north of Prescott, took possession of the
ranch which he now occupies, and has ever since occupied
the same. Along with this, his ranch, he has ever since
used and still continues to use, for purposes of irrigation,
one fourth of the water which flows through a certain ditch
or drain, not only to or through the defendant's ranch, but
also to or through the ranches of Robert Postle, George
Banghart, and the ranch of the plaintiffs. The use of the
one fourth of the water flowing through the ditch or drain

above described from February 1, 1870, to January 1, 1872, is the wrong of which the plaintiffs complain; and they claim, with their costs, damages in the sum of two thousand dollars, which they aver they have suffered by this alleged unlawful use of the water described. The defendant denies that his use of the water described was unlawful at all, denies that he has damaged the plaintiffs, and asks to be dismissed with his costs.

This is the issue tried in the court below, and the correctness of the verdict and judgment thereupon in favor of the defendant is the question to be reviewed here in this court.

It is to be regretted that the settlement in Chino valley, of which the property in question constitutes part, was not more fully and correctly described than it is in the record of the present case. The ranch of the plaintiffs, in two of the deeds submitted in evidence on the trial of the case, is described as situated west of Postle's ranch; while the same ranch, in two other deeds submitted in evidence on the trial of the case, is described as situated north of Postle's ranch. The order of the several ranches on the ditch or drain, which conducts the water for their common irrigation, is not given; while their boundaries are entirely omitted, not only in the pleadings and evidence, but even in such deeds of them as have been submitted in evidence on the trial of this cause. The water right in controversy is wholly omitted from the original deed of the plaintiffs' title, as the same appears in evidence, while their counsel is found denying the defendant's claim to contest this very right with them, because of the same omission from his own deed. The court is thus left to conjecture, and counsel are involved in absurdity on matters of the utmost importance in the discussion of questions such as the present case presents.

It seems that Postle's ranch is above all others on the ditch or drain which is the common medium of supply, and about three quarters of a mile from the mass of the water upon which all depend. The relative positions of the plaintiffs' and defendant's ranches do not appear except from conjecture. Of all those who depend on a single drain or ditch for water, it is impossible for any one to exhaust or reduce the supply of others, excepting such as are below him on the same ditch or drain.

The plaintiffs claim that the defendant has done this for them. From this, it would seem to be a presumption of fact, therefore, that the ranch of the defendant is higher up the ditch or drain, and nearer the common source of the water supply, than the ranch of the plaintiffs. Of ranches located or selected for purposes of irrigation, other things being equal, those nearest the water supply are first chosen. From this it would also seem to be a presumption of fact that the ranch of the defendant must have been located, if not anterior to, at least contemporaneous with, that of the plaintiffs. The legal deductions from these presumptions of fact will be stated hereafter.

Further reference to the facts of this case will be made in connection with the points to which they pertain.

No assignment of errors has been made in this case, excepting such as appear in the briefs of counsel.

The points presented by the counsel of the appellants against the judgment in this case are as follows:

"1. The court erred in charging the jury, that if defendant had been in possession of the said property for five years, that plaintiffs must fail in this action."

"The owners of the property in question were tenants in common of the water right—the possession of one being the possession of all."

"2. The court erred in rejecting the evidence offered by plaintiffs of a meeting held by Banghart, Brown, and Postle, in which the two former refused to let defendant have any of the water claimed by them, that Postle said he would let him have part of his, and that there was no other understanding between them.

"3. The court erred in refusing to give the third instruction asked for by plaintiffs' counsel: 'That defendant having asserted a right under the deed of Degrallo is bound by it, and that the statute of limitations does not begin to run until he claims under the right now set up by him.'

"4. The court erred in charging the jury that plaintiffs were estopped by the declarations of Brown.

"5. The court erred in its charge to the jury that there must be a preponderance of evidence in favor of plaintiffs, to enable them to recover.

"6. The court should have sustained the objection of the plaintiffs: 'That the court was not legally in session.'"

As the last of the above-cited exceptions is first in practical order, and if allowed must impel this court to reverse the judgment in the present case, it is proposed to consider it first.

The legislature of this territory has, from its origin, assumed that it is authorized to fix the terms of the supreme and district courts. Till the present case, no conflict has arisen on this subject between this court and the legislature, because the practice of the court has been to adopt and ratify the action of the legislature in regard to the terms of the district courts.

At its session of 1871, the legislature enacted on this subject as follows: "The district courts in the several counties of the territory shall be held as follows, to wit:

"In the county of Pima, on the first Mondays of March and October of each year. In the county of Yuma, on the third Monday in March, and the first Monday in November of each year. In the county of Yavapai, on the third Mondays in June and November of each year."

This distribution of the terms of the district courts was undoubtedly a defective execution of the order of congress, because it contained no limitation to the sessions of the court. It was just such legislation as enabled a Mormon district judge to sit one hundred and twenty days, not for the transaction of business, but to charge the federal government an enormous bill of expenses—an abuse, or rather one of the abuses, which induced the act of congress of 1856, which will be cited hereafter. The ratifying order of the supreme court supplied this defect by imposing the necessary limitation.

It was found, however, that the interval—only two weeks—between the Yuma and Yavapai terms was absolutely too brief to enable the United States district attorney to transact the United States business at one of these courts, and reach the other in time for it there.

Accordingly, the legislature was invited to join the judges of the supreme court in amending this order—not because these judges doubted their power to make the order alone, but to avoid every appearance of disrespect towards the

legislature, and all possibility of exception, such as has been taken in the present case. The legislature refused to act, and the judges of the supreme court, not doubting their authority, made and promulgated the following order:

"Order of the supreme court of Arizona:

"Until the further order of this court, the terms of the district courts of the several districts of the territory of Arizona shall, respectively, commence at the times hereafter mentioned, and shall continue so long as may be necessary to transact the business before the respective courts, and no longer. In the first district, on the first Monday in March and the first Monday in October. In the second district, on the first Monday in April and first Monday in December. And in the third district, on the first Monday in June and first Monday in November.

"By order of the court, February 11, 1873.

"(Signed)          "JOHN TITUS, C. J.

"C. A. TWEED, Asso. Justice.

"DE FOREST PORTER, Asso. Justice."

In the order thus made, this court imposed upon the terms the only limit practicable in the case, that is, the whole of the two periods between the commencements of the respective terms. The court limited the sessions of the respective district courts to the time necessary to transact the business before the respective courts.

The changes thus made in the terms of the respective courts were *imperatively necessary* for the transaction of the judicial business of this territory.

The session and term of the district court of the third judicial district, and in and to which the exception of the present case was taken, was the semi-annual term, for both federal and territorial business, and for the whole district, with juries, grand and petit, called from all parts of such district.

The authority of this court to make the order in question is derived from the act of congress of August 16, 1856, 11 Sts. at L., p. 49, which is as follows:

"Sec. 5. That the judges of the supreme court in each of the territories, or a majority of them, shall, when assembled in their respective seats of government, fix and appoint the

several times and places of holding the several courts in their respective districts, and limit the duration of the terms thereof; *provided,* that the said courts shall not be held at more than three places in any one territory; *and provided, further,* that the judge or judges holding such courts shall adjourn the same, without day, at any time before the expiration of such terms, whenever in his or their opinion the further continuance thereof is not necessary."

A brief reference to the character and history of the act, of which the section cited is part, will show that it is fundamental to all the territories, remains unrepealed, and will probably so continue till the last territory shall take its place in the galaxy of states. This act consists of fifteen sections, and its title shows its comprehensive character: "An act to amend the acts regulating the fees, costs, and other judicial expenses of the government, in the states, territories, and District of Columbia, and for other purposes." No part of this act appears to have been repealed, certainly not the provision applicable to the present case, as appears by the large volume of our new federal code, sec. 1920, recently published.

The history of this act is one of much interest. Before and at the time of its passage, considerable dissatisfaction had existed, in most if not all the territories, with the operations of the federal government. "Territorial sovereignty" was announced as a favorite dogma of a certain school of active politicians. In Kansas and Utah, organized resistance more or less flagrant was made to the federal officers, especially the judges of the district courts. The president of the United States, during the session of congress by which this act was passed, in his "Proclamation respecting disturbances in Kansas," 11 Sts. at L., p. 791, uses this language in respect to the territory of Kansas: "It appearing that combinations have been formed therein to resist the execution of the territorial laws, and thus, in effect, subvert by violence all present constitutional and legal authority," etc. Part of this system was to intimidate or embarrass the federal judges, and thus prevent their administration. In Utah the state of society was, if possible, worse than in Kansas. Two years later, it there culminated in armed rebellion, so that the president of the United

States, in his "Proclamation respecting the rebellion and Mormon troubles in the territory of Utah," 11 Sts. at L., p. 796, employs, among other topics, this language: "Judges have been violently interrupted in the performance of their functions, and the records of the courts have been seized and either destroyed or concealed." There, as in Kansas, the legislature embarrassed the federal judges not of Mormon faith by denying them all legal aid, such as refusing to fix the times and places of their sessions. It was this last practice which induced the act of 1856, above cited, enabling the federal judges to fix their own terms. Enormous expenses were accumulated against the federal government by all in Utah whom the Mormons could control. This led to the severe system of accounting provided for in the act under consideration.

Careful consideration of section 5 of the act of 1856, above cited, shows that it intended to enable the United States judges in the territories to appoint the terms of their own district courts, independently of legislative control. No respectable authority, it is submitted, has been or can be cited which conflicts with this conclusion. The opinion of Judge Conkling certainly does not. His treatise was written eight years before the organic act of New Mexico was passed, and twenty years before Arizona was organized. Commenting on this topic in his treatise, p. 201, he says: "But by a general act of August 16, 1856, c. 124, 11 Sts. at L., p. 49, the judges of the supreme court of the several territories are required"—this is his own language—to do what? "When assembled at their respective seats of government, to fix and appoint the several times and places of holding the several courts in their respective districts," etc. The learned commentator has misquoted the law under consideration, but he has not so far mistaken as to deny its true operation, for he not only concedes to the judges of the territorial supreme courts the authority to fix the terms of their respective district courts, but declares they are required to do so.

The act of June 14, 1858, 11 Sts. at L., p. 366, furnishes no rule for the construction of the act of 1856, already cited. It is perfectly apparent that were the authority given the federal judges to fix the times and places, or either, of holding the county courts, without anything more, such

grant of authority would be futile. The judges would have no means of paying the expenses of these courts, and the United States refuse to pay them. Congress did not intend to confer on the federal judges of the territories the authority to appoint county courts, while withholding from them the means of its execution. It has wisely left the authority of fixing the county courts to the territories, or the counties themselves by which the expenses are to be paid. This was obviously the intention of congress in making this difference between these statutes, and not "forgetfulness" of the act of 1856.

The case of *Klopfer* v. *Keller*, 1 Col. 410, is no authority in this case. It was tried at a special county court, in which the act of 1856 could not legitimately come in question. It presents, therefore, the case of a mere *obiter dictum*, decided under a Colorado statute, passed in accordance with the organic law of that territory framed in 1861. Chief Justice Hallett, who announced this *dictum*, based it on the fact that the enabling power of congress in the organic law of Colorado, and the territorial statute passed under it, were both subsequent to the congressional act of 1856. Our organic law, on the contrary, is six years prior to the act of 1856. The cases cited in the case above entitled are not more applicable to the courts of this territory than the principal one.

*Dunphy* v. *Kleinsmith*, 11 Wall. 610, is more applicable to the case in controversy than the opinion cited in argument from Conkling, or that of *Klopfer* v. *Keller*, from 1 Col. 410. In that case the power of a Montana court to try an equity case by jury was absolutely denied, and the legitimacy of a jury of nine was seriously questioned by the supreme court of the United States, with all the power a territorial legislature can confer. This case shows that the powers conferred by congress on the United States courts in the territories are not to be impaired by territorial legislation.

The supreme judges of this territory, therefore, had the power to appoint the regular terms of the district courts, for each of the several entire districts; and this exception to the contrary is overruled.

The error first assigned on the brief of appellants' counsel and the one next to be considered is as follows:

"1. The court erred in charging the jury that if defendant had been in possession of the said property five years, plaintiffs must fail in this action."

To this the appellants' counsel adds: "The owners of the property in question were tenants in common of the ditch and water right—the possession of one being the possession of all."

The latter statement is certainly true, and it is an abandonment of this exception. This unity of possession, which makes the defendant a tenant in common with the plaintiffs, protects him from all disturbance by them or either of them. He can call upon them to account for any invasion of his rights, and his unity of possession can only be dissolved by proceedings in partition, or by amicable agreement.

If this is not so, then from all that appears in the present case, the five years and some months which elapsed between the defendant's entry upon the enjoyment of the water right in March, 1867, and the institution of this suit in August, 1872, must bar the plaintiffs' recovery. Compiled Laws, p. 331, sec. 3.

From all that appears in the present case, therefore, the defendant is entitled to the protection which is due to a tenant in common, or to the statute of limitations, and in either event this exception must be and is overruled.

The next exception is as follows:

"2. The court in rejecting the evidence offered by plaintiffs of a meeting held by Banghart, Brown, and Postle, in which the two former refused to let defendant have any of the water claimed by them; that Postle said he would let him have of his, and that there was no other understanding between the parties."

No legal right of the plaintiffs was infringed by the rejection of this evidence. The defendant was not present at this meeting, either personally or by representation. The declarations of the persons present, whether confined to the parties themselves or communicated to the defendant, could not affect his legal rights, unless it should appear that he in some way accepted or assented to them. It does not appear that his acceptance or assent was shown or proposed to be shown. This exception is therefore overruled.

The third exception is as follows:

"3. The court erred in refusing to give the third instruction asked for by plaintiffs' counsel: 'That defendant having asserted a right under the deed of Degrallo is bound by it, and that the statute of limitations does not begin to run until he claims under the right now set up by him.'"

It does not clearly appear, either from the record or the argument upon it, what is meant by this exception. To be at all available for the plaintiffs, it must be found to refer to some portion of the evidence in the case. The only portion of the evidence in the case to which this exception appears to be responsive is defendant's allegation, that "early in 1867 Brown offered him a ranch in Chino valley, as an inducement for him to bring his family and settle there." This seems to be that which this exception describes as "the right now set up by him." The exception assumes that this is in some way fatally conflicting with the "defendant's having asserted a right under the deeds of Degrallo," and that this severed the tenancy in common, which is asserted by the plaintiffs' first exception, and formed an era in the case which put the statute of limitations in active operation. Such, however, is not the legal effect of this testimony. There is really no conflict in the defendant's claiming at one time under Degrallo's deed, and at another under Brown's promise. They are parts of one complex transaction, in which the deed appears as the fulfillment of the promise previously made. The defendant might at one time assert that Brown's promise was the consideration which actuated him; at another, the five hundred dollars mentioned in Degrallo's deed; at another, the deed itself; and at other times any two of these, or all three of them together: and yet by these he would forfeit no legal right and incur no legal hazard. The defendant, in his conversations on this subject with Brown himself, or with Brown's grantees, would naturally refer to Brown's promise; with strangers, to Degrallo's deed; and in stating the cost of his ranch and water right to anybody, he might allege the five hundred dollars mentioned in the deed, by which he and his must expect to hold them, and be guilty of no breach of legal or moral truth, and incur no forfeiture or hazard.

No error appears in the charge thus excepted to, and the exception must be overruled.

The fourth exception is as follows:

"4. The court erred in its charge to the jury, that plaintiffs were estopped by the declarations of Brown."

The exception does not fully state the charge of the judge upon the trial of this case, nor the evidence to which it refers. The charge was this: "Again, if Brown did represent to defendant while he, Brown, was in possession of the property now claimed by the plaintiffs, that one fourth of the water flowing in the ditch was the property of Degrallo, and used the inducements alleged to induce the defendant to go there and settle, and defendant, relying on his representations, did so go to that valley and enter upon the possession of the ranch and water right, under and by virtue of any alleged purchase or agreement by Brown, or Brown and Postle, from or with Degrallo, these plaintiffs are estopped, as Brown himself would be if he were the plaintiff in this action, from denying such right of defendant to one fourth interest in the water right forever after—and this if Degrallo never had any right or interest in the property whatever, or if there was no such man in being."

The whole of this exception must be taken together, with the evidence to which it refers, in estimating its legal effect in this case. On recurring to the testimony, we find that the defendant took possession of his ranch and one fourth of the water now in controversy in March, 1867, and has ever since used and enjoyed both, and that the deed of Degrallo to defendant was recorded April 11, 1867. Brown's deed to Schneider is dated November, 1867; Schneider's deed to Campbell, one of the plaintiffs, and Buffum, is dated August, 1868; and Campbell's deed to Baker, the other plaintiff, is dated March, 1872. The only principle upon which Brown's grantees, the present plaintiffs, can deny the binding effect upon them of Brown's declarations concerning the water to the defendant, would be that they had no notice of them. In respect to this, the presumption of law is, that Campbell and Baker exercised ordinary diligence in ascertaining the conditions and relations of their ranch at the time they took possession of it in November, 1867, and in March, 1872.

The law requires of them ordinary diligence, in all such matters as this water controversy, in which others are concerned. *Vigilantibus non dormientibus subservit lex.* The law will hardly take from the defendant his ditch water and give it to the plaintiffs in pity or approval of their self-imposed ignorance at the time they purchased their present ranch. The evidence shows that if they then made the ordinary efforts to learn the extent of their water rights, they found the defendant in possession and enjoyment of the one fourth of the water now in controversy, his deed of record for the ranch he occupied and farmed, and the public repute of the locality conceding the defendant's right to the water of which the plaintiffs now seek to deprive him. The evidence shows that John G. Campbell, one of the plaintiffs in this case, made his tenant, D. R. Poland, understand that the defendant owned the one fourth of the water in controversy at the time of their engagement in 1868. It is somewhat significant that in Brown's deed to Schneider, of November 5, 1868, for the ranch which the plaintiffs now claim, there is no mention of any ditch or water right whatever, and that the quantity is not stated in any of the subsequent deeds for the same property. If this court had any doubt of the conclusion above stated, the defendant's right could be maintained on the ground of parol license.

It has none, however, and this exception must be and is overruled.

The fifth and last exception is as follows:

"5. The court erred in its charge to the jury, that there must be *a preponderance* of evidence in favor of plaintiffs to entitle them to recover."

The proposition thus excepted to would seem so axiomatic as to defy either question or discussion. If in any case the evidence should be equal on one side and on the other, how could the jury find a verdict at all? The jury would be compelled to agree to disagree in such a case, and thus the trial would fail. In cases such as this, if they actually do occur, it is the highest duty of the jury to disagree. To enable a jury, therefore, to find a verdict at all, in any case in which there is conflict of testimony, there must be a preponderance of evidence in favor of one side, and the jury

must find it as a condition precedent to the rendition of their verdict. That the judge thus stated a truism to the jury on the trial of this cause, is no matter of successful exception.

And this exception is accordingly overruled.

The exceptions of the appellants thus all fail, and there is nothing else in the record to show why the judgment in this case should not be affirmed.

This conclusion, it is submitted, if there were any doubt of its legality, could be sustained on the evidence which the case presents of a parol license to the defendant of the water right in controversy.

And the same conclusion is reached by another most simple process of investigation. It was found as a presumption of fact in the statement of this case, that the defendant was located higher up on the ditch and nearer the source of water supply than the plaintiffs; and also, as another presumption of fact, that his location was therefore older than theirs. By a very simple deduction the legal conclusion, therefore, is, *prior in tempore, potior in jure,* in the absence of all sufficient evidence to the contrary, that the defendant's right is better than the plaintiffs'.

The judgment of the court below in the present case is therefore hereby affirmed.

TWEED, A. J., concurred.